UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WEBIMAX, LLC,

       Plaintiff,

v.                           CASE NO. 3:11-cv-993-J-34JBT

DANIEL JOHNSON,

       Defendant.

_____/

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on Plaintiff Webimax, LLC's, Motion to Enforce Confidential Settlement Agreement ("Motion") (Doc. 65).[2] Defendant Daniel Johnson, proceeding *pro se*, has filed a Response entitled "Opposition to Motion to Enforce Settlement Agreement" ("Response") (Doc. 67).

Plaintiff's Motion does not include a statement of the specific relief it seeks in the Court's order, as required by Federal Rule of Civil Procedure 7(b)(1)(C). Instead, it urges the Court that "the settlement agreement must be enforced." (Doc.

---

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations.  A party may respond to another party's objections within 14 days after being served with a copy."  Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); M.D. Fla. R. 6.02(a).  "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).

[2] Upon Plaintiff's motion (Doc. 60), the Court allowed Plaintiff to file portions of the instant Motion, including the terms of the settlement agreement, under seal. (Doc. 61.) To preserve confidentiality, this Report & Recommendation quotes or references only those portions of the agreement that do not reveal its substantive terms.

65 at 11.)[3]   Defendant's Response asks the Court to "order [the] settlement agreement invalid." (Doc. 67 at 2.)  Since the validity of the settlement agreement is squarely in issue, the undersigned recommends that the Court decide that issue, despite the unusual procedural posture presented.[4]  The Court has jurisdiction to do so.  *See Kent v. Baker*, 815 F.2d 1395, 1396 (11th Cir. 1987) (holding that a district court has jurisdiction to enforce a settlement agreement when a breach is claimed before the court has dismissed the action); *Clark v. School Bd. of Bradford Co.*, No. 3:09-cv-901,  2010 WL 4696063, at *6 (M.D. Fla. Oct. 13, 2010) (report  and recommendation of magistrate judge in substantially the same procedural posture, subsequently adopted by court).

For the reasons here stated, the undersigned respectfully **RECOMMENDS** that Plaintiff's Motion be **GRANTED** and the settlement agreement be declared valid

---

[3] The electronic version of Plaintiff's Motion and the physical copy filed under seal contain different pagination.  The electronic version omits page three of the redacted settlement agreement attached as Exhibit 1 to the Wisnefski Declaration and includes a different Exhibit B to the Arena Declaration. In this Report and Recommendation, page numbers refer to the physical copy filed under seal.  Additionally, although Plaintiff has paginated the declarations and exhibits separately, this Report and Recommendation will treat the Motion and its attachments as one consolidated document such that, e.g., the citation "(Doc. 65 at 27)" refers to the twenty-seventh page of the combined document.

[4] Plaintiff also requests a "hearing with the Court to address the prospect of Defendant's future non-compliance with the settlement agreement, Defendant's Opposition to Webimax's motion to dismiss Webimax's claims without prejudice, Defendant's continued harassing conduct directed towards WebiMax and its counsel and other issues arising from Defendant's conduct that unfortunately must be addressed if the litigation between the parties is to be resolved."  However, these issues go well beyond determining the enforceability of the settlement agreement, which is the only issue presented in the body of the Motion.  A hearing is not necessary to decide this issue.

and enforceable.

## I.    Background

### a.    Procedural History

Plaintiff moves to enforce a settlement agreement that resolved its claims against Defendant for breach of contract, copyright infringement, defamation, and tortious interference with business relationships. (Doc. 65.)  A signed copy of the agreement is attached as Exhibit 1 to the Declaration of Ken Wisnefski, Plaintiff's CEO, which is attached to Plaintiff's Motion.  (Doc. 65 at 16-20.)  It is signed by Wisnefski and by Defendant, indicating each party's assent to its terms.  (*Id.* at 20.) The parties also agreed upon a subsequent addendum to this initial agreement. This addendum is attached as Exhibit 2 to the Wisnefski declaration.  (*Id.* at 22.) Defendant does not dispute the authenticity of either the settlement agreement or the addendum, including his signature on both. (*See* Doc. 67.)

Plaintiff files this Motion in response to statements Defendant made in his previously filed Opposition to Motion for Dismissal Without Prejudice ("Opposition") (Doc. 59). Upon execution of the settlement agreement and pursuant to its terms, Plaintiff filed notice of settlement with this Court and moved to dismiss the case without prejudice to Plaintiff's ability to refile the Complaint should Defendant breach the agreement. (Doc. 58.)[5]  By this time Defendant had repudiated the agreement, however, and therefore Defendant opposed the motion to dismiss.  (Doc. 59.) In his

---

[5] As of the date of this Report and Recommendation, this Motion is still pending.

Opposition, Defendant asked for dismissal *with prejudice* and made arguments on the merits of Plaintiff's claims.  (*Id.*)

Defendant also attacked the validity of the settlement agreement in his Opposition.  As grounds, he stated that he "was recently rushed into signing a settlement agreement by Plaintiff, but was not able to thoroughly read the contract and fully understand what was in it due to other more important life changing events taking place at this time." (Doc. 59 at 7-8.) He stated that Plaintiff threatened further legal action if Defendant did not sign the agreement, including a seven-hour deposition, the prospect of summary judgment, and the spectre of a large debt to Plaintiff at the litigation's end. (*Id.* at 8.) Defendant also asserted that Wisnefski and Plaintiff's attorney misrepresented what was in the contract, and that it varied from terms that the parties had previously discussed. (*Id.*)  As a result, Defendant "immediately cancelled the contract" and asked the Court to "assist in rectifying the current issue with the settlement agreement."  (*Id.*)

Defendant also filed a separate Response to the current Motion.  (Doc. 67.) In this Response, Defendant reiterates his argument that the signed settlement agreement is not enforceable because it varied from the terms previously discussed by the parties.  He further argues that the agreement is unenforceable because he did not have an attorney review the agreement with him.  (Doc. 67 at 2.)  Finally, he argues that the agreement is invalid because he repudiated it the day after signing it.  (Doc. 67 at 1.)

4

### b.     Facts Surrounding the Execution of the Settlement Agreement

Plaintiff submitted two sworn declarations with its Motion, each containing facts and relevant exhibits.  These exhibits include executed copies of the settlement agreement and addendum and emails between Plaintiff, Defendant, and Plaintiff's attorney.  Defendant does not dispute the authenticity of these exhibits in his Response.  The uncontested facts as shown by the exhibits establish that the parties reached a valid settlement agreement.[6]

Plaintiff's CEO, Kenneth Wisnefski, made the first of the declarations attached to Plaintiff's Motion.  (Doc. 65 at 13-20.)  Wisnefski states that on September 10, 2012, he and Defendant signed a settlement agreement, attached to his declaration as Exhibit 1.[7]   (*Id.* at 13.)  Wisnefski further declares that on September 12, 2012, the parties executed an addendum to the settlement agreement, attached to the declaration as Exhibit 2, but that on September 13, 2012, Defendant announced his intention to cancel the contract anyway.  (*Id.* at 14.)  Wisnefski states, "I do not know what prompted this announcement.  I still do not know what Johnson believes we

---

[6] Neither party requested an evidentiary hearing and the undersigned recommends that one is not necessary because there are no material facts in dispute.  *See, e.g.*, *Murchison v. Grand Cypress Hotel Corp.*, 13 F.3d 1483 (11th Cir. 2007) (holding that a district court has authority to summarily enforce settlement agreement, and decision is reviewed for abuse of discretion).

[7] Wisnefski also observes that "[f]ollowing the signing of the agreement, [Defendant] expressed disappointment to me that the litigation was over, and said he was not sure what he would do with his time now, as the litigation had given him a sense of purpose in life." (Doc. 65 at 13)

discussed verbally that the existing agreement does not reflect or what he claims was misrepresented." (*Id.*)

Plaintiff also includes a declaration from Plaintiff's counsel, Alexis Arena. (*Id.* at 23-25.)  Arena states that Defendant initiated settlement discussions on August 30, 2012, and that negotiations continued until the settlement agreement was executed on September 10, 2012. (*Id.*)  Arena attached emails between her, Wisnefski, and Defendant as exhibits to her declaration. (*Id.* at 26-64.)

These emails show that on August 30, 2012, Arena emailed Defendant a copy of a notice of deposition, scheduling Defendant's deposition for September 10, 2012. (*Id.* at 26.)  Arena observes in the body of the email that she tried to call the Defendant to arrange a convenient time for the deposition in advance, but was unable to do so because Defendant did not pick up his phone. (*Id.*)  Defendant replied to this email on the same day, stating that he would not be available on September 10. (*Id.* at 27.)  Arena asked for a date on which Defendant would be available before September 11, 2012, as the time for discovery closed on September 10. (*Id.*)  Defendant replied that he would not be available anytime before September 11, "for reasons I'd rather not discuss with you." (*Id.*)  Arena replied, asking for a date after September 11 that would be convenient for Defendant, and offering to file a motion to extend the discovery deadline to accommodate the new deposition time. (*Id.*)

The next email chain attached to Arena's declaration concerns settlement of

6

Plaintiff's claim.  (*Id.* at 29-30.)   The chain contains emails exchanged between 10:20 PM and midnight that same night, August 30, 2012, and reflects productive settlement negotiations.  Arena sent Defendant the first email in the chain.  This email states that Arena "was able to discuss your settlement offer" with Plaintiff, and advances a counterproposal.  Defendant replies, "Sounds good, I will discuss with you next week." (*Id.* at 29.)  The terms of Plaintiff's counterproposal are very similar to the terms of the final executed settlement agreement.

On September 6, Arena sent an email to Defendant with a draft of the settlement agreement attached.  (*Id.* at 31.)  Arena invites Defendant to "give me a call if any of these provisions is unclear, so that we can discuss the language and its meaning."  (*Id.*)  She observes that she "tried to make the language mutual (similar language for you and for WebiMax) where possible, and to track the language [in the August 30, 2012 email]."  (*Id.*)  Review of the executed settlement agreement reveals that indeed the language is mutual and the agreement does track the August 30, 2012 email.  Arena concludes by inviting Defendant to "reach out to me with any questions or concerns."  (*Id.*)

On September 7, 2012, Arena sent Defendant a revised copy of the settlement agreement, incorporating "all of the revisions we discussed." (*Id.* at 32.)

On September 10, 2012, at 3:17 PM and after another round of discussions with Defendant, Arena sent Defendant another draft of the agreement.  (*Id.* at 33.)  She followed up a minute later, apparently having previously attached a redlined

draft, rather than a clean one.  (*Id.* at 34.)  At 4:05 PM, Arena sent Defendant an email with a copy of the agreement signed by Wisnefski.  She said, "We are waiting for your signature."  (*Id.* at 35.)  At 5:09 PM, Defendant emailed a copy of the agreement with his signature to Arena.  (*Id.* at 36.)  This agreement included an integration clause.[8]

On September 11, 2012, at 8:05 AM, Defendant emailed Wisnefski, requesting an addendum to the agreement.  (*Id.* at 38.)  Wisnefski consented and the parties executed the addendum on September 12.  (*Id.* at 30.)  Also on September 12, Defendant sent an email to Plaintiff and Plaintiff's counsel stating, "this is what we discussed" and setting forth eight contract terms.  (*Id.* at 43.)  These terms appear to be substantially identical to the terms of the executed September 10, 2012, settlement agreement.

Defendant did not attach any declaration or affidavit to his Response.  But even in the text of his Response, Defendant does not dispute the authenticity of the settlement agreement and addendum attached to Wisnefski's declaration or the emails attached to Arena's declaration.  He further does not dispute that he initiated the settlement talks.  Instead, Defendant urges that the executed settlement agreement failed to reflect the terms upon which the parties previously agreed and

---

[8] The integration clause reads: "This agreement is the entire agreement among the Parties relative to the released claims and settlement, and there are no written or oral understandings, promises, agreements, statements or representations among the Parties directly or indirectly related to this Agreement that are not incorporated in it."  (Doc. 65 at 19.)

that "Arena intentionally made the written contract different than what was verbally agreed upon." (Doc. 67 at 1.) However, he fails to specify exactly what was different between the written agreement and any prior verbal agreement.

Defendant also avers that he sent Plaintiff a series of emails repudiating the contract, and that Plaintiff "refuses to acknowledge" these emails. (Doc. 67 at 2.)

## II.  Discussion

The interpretation and enforcement of a settlement agreement is governed by state contract law. *Wong v. Bailey*, 752 F.2d 619, 621 (11th Cir. 1985); *R.A.M., LLC v. Hill*, 393 Fed. App'x 684, 686 (11th Cir. 2010) (unpublished); *see also Resnick v. Uccello Immobilien GMBH, Inc.*, 227 F.3d 1347, 1350 (11th Cir. 2000).[9]  Florida courts favor enforcement of settlement agreements whenever possible. *Spiegel v. H. Allen Holmes, Inc.*, 834 So. 2d 295, 297 (Fla. 4th DCA 2002).  Plaintiff, as the party seeking to enforce a settlement agreement, bears the burden of showing by a preponderance of the evidence that Defendant assented to the terms of the agreement. *Id.*  Plaintiff has satisfied this burden through the aforementioned affidavits, emails, and executed settlement agreement and addendum.

In his Response, Defendant makes several arguments concerning why the Court should set aside the settlement agreement.  None of them has merit.

---

[9]  *Resnick* recognized that federal common law is disfavored and applied only in rare instances. 227 F.3d. at 1350 n.4. In that case, the court stated, "Because this settlement agreement is between two private parties, federal common law does not apply." *Id.* A similar analysis should apply here.

Defendant primarily argues that the agreement is unenforceable because Defendant did not thoroughly read the agreement and understand its terms, and that the agreement differed from the terms the parties had previously discussed. (Doc. 67 at 1.) It is hornbook law in Florida that a party cannot avoid its obligations under a contract merely because he failed to thoroughly read the contract terms. 11 Fla. Jur. 2d Contracts § 55; *see also Citibank v. Dalessio*, 756 F. Supp. 2d 1361, 1368 (M.D. Fla. 2010); *Petersen v. Florida Bar*, 720 F. Supp. 2d 1351, 1359 (M.D. Fla. 2010); *Linville v. Ginn Real Estate Co.*, 697 F. Supp. 2d 1302, 1307-08 (M.D. Fla. 2010); *Mitleider v. Brier Grieves Agency, Inc.*, 53 So. 3d 410, 412 (Fla. 4th DCA 2011); *Murphy v. Courtesy Ford, L.L.C.*, 944 So. 2d 1131, 1134 (Fla. 3d DCA 2006) ("In Florida, a party to a contract is not permitted to avoid the consequences of a contract freely entered into simply because he or she elected not to read and understand its terms." (internal quotation marks omitted)). To allow a party to avoid a contract because the party allegedly did not read and understand the document would "render contracts worthless as a tool of commerce." 11 Fla. Jur. 2d Contracts § 55.

"Unless one can show facts and circumstances to demonstrate that he was prevented from reading the contract, or that he was induced by statements of the other party to refrain from reading the contract it is binding." *Kinko's, Inc. v. Payne*, 901 So. 2d 354, 356 (Fla. 2d DCA 2005) (quoting *Allied Van Lines, Inc. V. Bratton*, 351 So. 2d 344, 347-48 (Fla. 1977)). Defendant cannot make this showing. The

emails attached to Arena's declaration reveal that Plaintiff did not even pressure Defendant in any manner to sign the agreement without reading it, much less prevent him from reading it or induce him not to read it. Upon sending the first draft of the agreement, Arena invited Defendant to review it and to call her with questions or concerns. (Doc. 65 at 31.) It appears Defendant had some questions and some concerns and revisions were made to the agreement on September 7 (*id.* at 32) and September 10 (*id.* at 33). On September 10, when Arena sent the final draft of the agreement, Arena asked Defendant to sign the last page "if this looks good," (*id.*) inviting Defendant to again read the document.

The only hint of any urgency placed on Defendant to sign the settlement agreement appears in the email sent on September 10, 2012, at 4:05 PM (*id.* at 35). In it, Arena includes a copy of the agreement signed by Plaintiff and informs Defendant that "we are waiting for your signature." (*Id.*) But this comment comes nowhere close to the level of prevention or inducement required to set aside the agreement. *See Allied Van Lines, Inc. v. Bratton*, 351 So. 2d 344, 346 n.3 (Fla. 1977) (holding a residential moving contract enforceable where customer felt rushed and did not read the contract because the moving company employees "were in a hurry to get out.")

Moreover, Defendant did not deliver the signed agreement in response to Arena's email until 5:19 PM. (*Id.* at 36.) The agreement is only five pages long (*id.* at 16-20) and the parties had exchanged multiple drafts of the agreement during the

11

preceding four days (*id.* at 29-36).   Defendant's apparent argument that he was distracted by other events is clearly insufficient to show that Plaintiff prevented him from reading, or induced him not to read, the agreement.

Finally, it is not surprising that Defendant points to nothing specific in asserting that Plaintiff "misrepresented what was in the contract." (Doc. 59 at 8.)  In fact, the emails attached to Arena's declaration reveal that the executed settlement agreement appears to conform to the terms the parties discussed in the course of their oral negotiations.   Specifically, on September 12, 2012, Defendant sent Plaintiff's counsel an email containing an eight-item list, entitled "terms of contract discussed." (*Id.* at 43.)  These eight items appear consistent with the executed settlement agreement's core terms. (*See id.* at 16-20.)

Turning to Defendant's further arguments, Defendant suggests in his Opposition that he signed the agreement under duress.  (Doc. 59 at 7-8.)  To set aside a settlement agreement based upon a claim of duress, the moving party must show that "(1) the settlement agreement was executed involuntarily, and thus not as a choice of free will; and (2) the other contracting party exerted some improper and coercive conduct over the moving party to effectuate settlement."   *City of Miami v. Kory*, 394 So. 2d 494, 497 (Fla. 3d DCA 1981).  Defendant does not satisfy either of these criteria.  First, there is no evidence that Defendant acted involuntarily in signing the agreement.  Second, to the extent Plaintiffs threatened Defendant with continuing the litigation against him, and the potential adverse consequences that

might entail, this does not constitute improper conduct.  Plaintiff had every right to pursue the litigation if the case was not settled.  "It is not improper, and therefore not duress, to threaten what one has a legal right to do."  *W.T. v. Dep't of Children and Families*, 846 So. 2d 1278, 1281 (Fla. 5th DCA 2003); *see also* 11 Fla. Jur. 2d Contracts § 56.

In response to Defendant's final arguments, first, a party cannot avoid a contract simply because he did not have a lawyer review it with him before he signed it.  *See, e.g.*, *Rocky Creek Retirement Properties, Inc. v. Estate of Fox ex rel. Bank of America N.A.*, 19 So. 3d 1105, 1110 (Fla. 2d DCA 2009) (holding contract enforceable against a party that declined to have an attorney review the agreement).  Second, a party cannot unilaterally repudiate a valid contract.  *Cox v. Grose*, 97 Fla. 848, 854 (1929) ("One party to a contract cannot by himself rescind it."); *see also*, 11 Fla. Jur.2d Contracts § 218.  In some circumstances, Florida law does provide a contracting party with a so-called "cooling off" period, during which he may cancel a valid contract shortly after entering into it.  *See, e.g.*, Fla. Stat. § 718.503 (2012) (providing condominium purchasers with fifteen days to cancel a sales contract).  However, Defendant points to no such law applicable to the agreement currently before the Court.  The undersigned's own research reveals none.

In conclusion, Plaintiff has sustained its burden to prove the existence of a mutually agreed-upon settlement agreement.  Defendant has not advanced any valid reason why the agreement should be set aside.

Accordingly, it is respectfully **RECOMMENDED**:

1.   Plaintiff's Motion to Enforce the Settlement Agreement (**Doc. 65**) be

     **GRANTED** to the extent stated below.

2.   The Court enter an order declaring the settlement agreement to be

     valid and enforceable.

**DONE AND ENTERED** at Jacksonville, Florida, on January 11, 2013.


_____
JOEL B. TOOMEY
United States Magistrate Judge


Copies to:

The Honorable Marcia Morales Howard
United States District Judge

Counsel of Record

Daniel Johnson
29 Captiva Dr.
Ponte Vedra, FL 32081
and via CM/ECF

14